Christopher J. Hamner, Esq. (SBN 197117)
**HAMNER LAW OFFICES, APLC**
26565 West Agoura Road, Suite 200
Calabasas, California 91302
Telephone: (888) 416-6654
E-mail: chamner@hamnerlaw.com

Attorneys for Plaintiff LYDIA LOWE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| LYDIA LOWE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>SEAN DUFFY, in his official capacity as Secretary of the UNITED STATES DEPARTMENT OF TRANSPORTATION,<br><br>Defendant. | Case No.:<br><br>COMPLAINT FOR:<br><br>1. Retaliation (Title VII)<br><br>2. Race and Color Discrimination (Title VII)<br><br>**DEMAND FOR JURY TRIAL** |

## I. INTRODUCTION

1. This is a retaliation action under Title VII of the Civil Rights Act of 1964. Plaintiff Lydia Lowe complained of discrimination at the Federal Aviation Administration's Los Angeles Air Route Traffic Control Center. She then filed an EEO complaint alleging discrimination based on race and color. She had also testified as a witness in a coworker's EEO complaint.

2. While her complaint was pending, management retaliated. In December 2025, it cut her training to one hour a day. It refused her skill deficiency training. It withdrew its offer of a new trainer and supplemental hours. In February 2026, it terminated her training after nearly four years.

3. Her Operations Manager knew of her EEO activity and controlled the decisions about her training. Trainees who had no EEO activity received the supplemental training she was denied.

4. Plaintiff has exhausted her administrative remedies. She seeks relief from this Court.

## II. PARTIES

5. Plaintiff Lydia Lowe is, and at all relevant times was, an individual residing in Los Angeles County, California. Plaintiff is African American. Her color is black. She is a woman.

6. Plaintiff worked for the Federal Aviation Administration as an Air Traffic Controller trainee in Area F of the Los Angeles Air Route Traffic Control Center in Palmdale, California ("ZLA"), from April 2022 through the events alleged here.

7. Defendant Sean Duffy is the Secretary of the United States Department of Transportation. He is sued in his official capacity only. The FAA is an operating administration of the Department. The head of the department is the proper defendant under 42 U.S.C. section 2000e-16(c). The Department, including the FAA, is referred to below as the "Agency."

8. At all relevant times Plaintiff was an employee of the Agency. The Agency was her employer.

9. At all relevant times John Cullings was an Operations Supervisor at ZLA and Plaintiff's first level supervisor. Jon Ralph was the Operations Manager for Area F and Plaintiff's second level manager. Sarah Fletcher was the Air Traffic Manager at ZLA and the manager of all air traffic personnel in the facility. Each acted within the course and scope of Agency employment. Their acts and knowledge are attributable to the Agency.

## III. JURISDICTION AND VENUE

10. This Court has jurisdiction over this action under 28 U.S.C. sections 1331 and 1343(a)(4). This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e-16.

11. Venue is proper in this District and in the Western Division. The unlawful employment practices alleged here occurred at ZLA in Palmdale, Los Angeles County, California. 42 U.S.C. § 2000e-5(f)(3); 28 U.S.C. § 1391(e).

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

12. Plaintiff timely contacted an EEO Counselor in 2025. 29 C.F.R. §1614.105(a)(1).

13. In 2025, Plaintiff filed a formal complaint of discrimination with the Department of Transportation Office of Civil Rights, Agency No. 2025-00416-FAA-06. The complaint alleged discrimination based on race, color, and reprisal.

14. Plaintiff amended the complaint to add the Agency's action of February 2026 in terminating her training. The Agency accepted the amendment. It framed the claim as follows: whether Complainant was subjected to discrimination based on race (African American), color (black), and reprisal (opposition) when on or around February 22, 2026, management proposed to terminate Complainant's training.

15. The Agency investigated the amended claim in March 2026. Plaintiff gave a signed affidavit to the Agency's investigator on March 19, 2026. The Agency issued a Report of Investigation in June 2026. Plaintiff requested a hearing before an EEOC Administrative Judge. She opened her case in the EEOC Public Portal on June 20, 2026.

16. Plaintiff then withdrew her hearing request and requested a final agency decision. On August 31, 2026, the EEOC dismissed the hearing request and remanded the complaint to the Agency for a final decision under 29 C.F.R. section 1614.110(b). The EEOC closed its file on September 1, 2026.

17. The Agency issued a Final Agency Decision on or about October 30, 2026. Plaintiff received it on or about November 4, 2026.

18. This action is timely. Plaintiff files it within ninety days of receipt of the Final Agency Decision. 29 C.F.R. § 1614.407(a).

19. Plaintiff has exhausted her administrative remedies and satisfied every administrative prerequisite to this action. Every claim alleged here was raised in, was investigated within, or is like or reasonably related to the claims in the formal complaint as amended.

## V. GENERAL ALLEGATIONS

### A. Plaintiff's Protected EEO Activity

20. Plaintiff engaged in protected activity in two ways.

21. First, before December 2025, Plaintiff participated as a witness in an EEO complaint filed by another employee. None of the other trainees in Area F was involved in that matter.

22. Second, in 2025, Plaintiff filed her own formal EEO complaint, Agency No. 2025-00416-FAA-06. It alleged discrimination based on race and color, and reprisal. It was pending throughout the events alleged here. The Agency was processing it when it terminated her training.

23. Ralph knew of Plaintiff's EEO activity. Plaintiff is informed and believes that Fletcher and Cullings knew of it as well.

24. The EEO activity made Plaintiff a target of her Operations Manager. Ralph controlled who received supplemental training hours. He controlled the decisions about her training that Cullings told her were made above him.

25. The treatment of Plaintiff's training changed after that activity. In December 2025, while her complaint was pending, management slowed her training to one hour a day. Every adverse action alleged below followed her EEO activity.

**B. Plaintiff's Training**

26. Plaintiff began training as an Air Traffic Controller at ZLA in April 2022. Cullings became her supervisor in the fall of 2022. Ralph was her Operations Manager when her training was terminated.

27. Plaintiff was certified on sectors in Area F and worked them. She trained on Sector 35, one of the busiest sectors in ZLA airspace.

28. Certification would have made Plaintiff a fully qualified controller at ZLA. It would have given her access to the full schedule, a three percent raise on her base salary, premium pay, overtime, and the corresponding increase to her pension.

29. Agency training is governed by the FAA National Training Order, JO 3120.04S (the "Training Order"). The Training Order requires at least twelve hours of training a week, or three hours a day. It requires that skill enhancement instruction be given in a timely manner. It allows a trainee up to three rounds of skill deficiency training, used in a block approach to build the trainee's skills.

30. The Training Order states that the purpose of the Training Review process is "to ensure that all reasonable opportunities for training success were afforded, while maintaining the integrity of the training program." It states that the review is accomplished by a clinical review of the training administered to the trainee.

**C. The Agency Slows and Withholds Plaintiff's Training**

31. During Plaintiff's first seventy hours of training, her trainer asked that she receive skill enhancement instruction. The Agency did not provide it until she reached 170 hours.

32. In December 2025, Cullings told Plaintiff that her training would be slowed to one hour a day, and only on busy traffic. The Training Order requires three hours a day. Plaintiff routinely went multiple days without training. On one occasion she went ten days without training.

33. Plaintiff objected to Cullings, formally and informally. She told him that the reduced training violated the Training Order and would not work.

34. Plaintiff asked on several occasions for skill deficiency training. Management refused. It told her that her training team did not feel the training would help because her deficiency was consistency. When Plaintiff asked what she was deficient in, no one gave her a specific answer.

35. Cullings told Plaintiff that decisions about her training were being made above him, between the union and management.

36. In January 2026, Plaintiff attended a training team meeting with Cullings, her trainer Brandon Green, and a second trainer, Minh Nguyen. Management offered Plaintiff Nguyen as a new trainer and supplemental training hours. Plaintiff accepted. She asked to move to Nguyen's days off, Sunday and Monday, to make the training easier. Cullings said he would have to check with the Operations Manager.

37. A few days later, Plaintiff attended a second meeting. Elda Rosales and Michael Piolatto were present. Management told Plaintiff that she would not receive Nguyen as a trainer and would not receive the supplemental hours. Plaintiff is informed and believes that Ralph made that decision.

38. Plaintiff asked Cullings to go back to Ralph and ask whether she could still move to Sunday and Monday days off. Cullings said he would run it by Ralph. Days later he had not spoken to Ralph. Plaintiff was then told she would go to a Training Review Board.

**D. The Agency Terminates Plaintiff's Training**

39. Plaintiff appeared before the Training Review Board. She explained what had happened and had not happened in her training.

40. On or around February 22, 2026, management proposed to terminate Plaintiff's training.

41. On February 25, 2026, Ralph, on behalf of Fletcher, issued Plaintiff a letter stating that, after review of the Board's recommendation and her training records, her training was terminated.

42. Plaintiff appealed. The Agency rejected the appeal. Fletcher delivered the rejection to Plaintiff with a copy of the Training Order.

43. Plaintiff asked for the Training Review Board report so she could see how the decision was made. Fletcher refused.

**E. Trainees Without EEO Activity Received the Training Plaintiff Was Denied**

44. Supplemental training hours are given at the discretion of the Operations Manager. The threshold for them is low. They are given automatically, without pushback, in most cases. Many trainees received them. Plaintiff did not.

45. Andrew Birkett, a white male trainee in Area F, received supplemental training. He had no prior EEO activity.

46. Aaron Fitzpatrick, a white male trainee in Area F, received supplemental training. He had no prior EEO activity.

47. Christopher Lambert, a white male trainee in Area F, received multiple rounds of supplemental training. He never received a recommendation from his training team. The Agency allowed him to sit for a certification check ride.

48. Management did not terminate the training of any of those trainees.

**F. The Agency's Explanation Is Pretext**

49. The Agency says it terminated Plaintiff's training because of her training record and the Board's recommendation. That explanation is false. The record was a product of the Agency's own conduct. It cut her training to a third of the hours the Training Order requires. It delayed instruction for 100 hours. It refused skill deficiency training that the Training Order provides for the very deficiency it cited. It withdrew the trainer and hours it had offered.

50. The Agency never told Plaintiff what her deficiency was. It never gave her the rounds of skill deficiency training it gave to white male trainees. It refused to give her the Board's report.

51. White male trainees in the same area, under the same Operations Manager, received supplemental training. One was allowed to sit for a certification check ride

without a recommendation from his training team. Plaintiff did not receive the same chance.

**G. Plaintiff's Damages**

52. As a direct and proximate result of the Agency's conduct, Plaintiff lost the opportunity to certify at ZLA. She lost the three percent raise, premium pay, overtime, and the corresponding pension increases she would have received. She worked under intense scrutiny and pressure while her training was slowed. She suffered stress, anxiety, and emotional distress. The amounts will be proven at trial.

## VI. CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Retaliation in Violation of Title VII (42 U.S.C. §§ 2000e-3(a), 2000e-16)

53. Plaintiff realleges and incorporates by reference paragraphs 1 through 52 above.

54. Title VII prohibits retaliation against a federal employee who participates in an EEO proceeding or opposes discrimination.

55. Plaintiff engaged in protected activity. She opposed discrimination by filing her own EEO complaint, Agency No. 2025-00416-FAA-06, which was pending when the Agency acted. She also participated as a witness in another employee's EEO complaint. Ralph knew of that activity. Plaintiff is informed and believes that Fletcher and Cullings knew of it as well.

56. After that activity, the Agency took actions that would dissuade a reasonable employee from engaging in protected activity. It cut her training hours, refused her skill deficiency training, withdrew the offer of a new trainer and supplemental hours, and terminated her training.

57. The protected activity caused those actions. The actions began while her complaint was pending and ended with the termination of her training. Ralph, who knew of her activity, controlled who received supplemental hours and decided that she would not. Birkett and Fitzpatrick had no EEO activity. They received supplemental training and progressed. Plaintiff did not. The Agency's explanation is pretext.

58. As a direct and proximate result, Plaintiff suffered the damages alleged above.

**SECOND CAUSE OF ACTION**

**Race and Color Discrimination in Violation of Title VII (42 U.S.C. § 2000e-16)**

59. Plaintiff realleges and incorporates by reference paragraphs 1 through 52 above.

60. Title VII prohibits discrimination in federal employment based on race and color. 42 U.S.C. § 2000e-16(a).

61. Plaintiff is African American. Her color is black. She was qualified to continue her training. She had trained for nearly four years and worked sectors on which she was certified.

62. The Agency subjected Plaintiff to adverse employment actions. It cut her training hours. It refused her skill deficiency training. It withdrew the offer of a new trainer and supplemental hours. It terminated her training.

63. The Agency took those actions because of Plaintiff's race and color. It treated similarly situated white male trainees more favorably. Birkett, Fitzpatrick, and Lambert received supplemental training and were allowed to continue. Lambert was allowed to sit for a certification check ride without a training team recommendation. No black woman received the same treatment.

64. The Agency's stated reasons are pretext, as alleged above.

65. As a direct and proximate result, Plaintiff suffered the damages alleged above. Plaintiff is entitled to relief under 42 U.S.C. § 2000e-16(d) and 42 U.S.C. § 1981a(a)(1).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. A declaration that the Agency's acts violated Title VII;
2. Back pay, including lost premium pay, overtime, and the three percent raise Plaintiff would have received on certification, with interest, according to proof;

3. Instatement into Plaintiff's training at ZLA, with the supplemental training and review the Training Order provides, or in the alternative front pay and the monetary equivalent of certification added to her pension, according to proof;
4. Compensatory damages for emotional distress and other nonpecuniary losses, in an amount to be proven at trial, as permitted by 42 U.S.C. § 1981a;
5. An order directing the Agency to remove the training termination and related records from Plaintiff's personnel file;
6. An injunction prohibiting further discrimination and retaliation against Plaintiff;
7. Reasonable attorney's fees and costs under 42 U.S.C. § 2000e-5(k);
8. Prejudgment and post judgment interest as permitted by law; and
9. Such other and further relief as the Court deems just and proper.

Dated: November 19, 2026

**HAMNER LAW OFFICES, APLC**

/s/ Christopher J. Hamner

Christopher J. Hamner, Esq.
Attorney for Plaintiff